Reese J.
delivered the opinion of the court.
The bill states that the defendant has unjustly obtained certain judgments at law against the Elias, *34 which he has caused to be issued executions, and has levied the same upon the other complainants, as being' the slaves and property of said Elias: and the bill seeks by injunction, to restrain the sale of them, and to procure a decree emancipating them. The Chancellor dismissed the bill, and the complainants have appealed to this court. The substantial facts are, that many years ago Elias was emancipated by his owner, one Inman- He was permitted by one Phelps Read, to intermarry with his slave, Tenor; after they had two children, Elias arid' said Read entered into a contract, which stipulated, that Elias should take the woman and children, and support and maintain them, until the latter became ten years of age, at which time, they, the two children, should be returned to Read; but the woman was to continue to live with the husband, who was to support her and keep her at .all times from being chargeable to the said Read, or to the ’ county. Elias and one Inman, as his surety, in writing, and under their seals, covenanted to perform these stipulations. The covenant was made to Read; it was not signed by him. The woman and children were taken, and kept by Elias. The latter were returned according to the stipulations of the covenant. Read died, having had no subsequent possession of the woman, and having made no disposition of her. After his death, his administrator was advised that it might be safe for him at the sale of the personal property, to sell the woman and a child then lately born, one of the complainants:— this was mentioned to Elias, and he, after much importunity and with great reluctance, consented to bring them to the place of sale, being assured by the administrator and all the heirs at law that, regarding their father as having purposed her freedom, they had no thought of reducing her and the -child to slavery, and that he, the husband, might bid for, and •buy them, for a trifle.
This was accordingly done; and Elias became the purchaser of his wife and child, with the consent of all present, administrator, heirs, and others, for the sum of ten dollars; they, if regarded as slaves, being worth, at the time, six or seven hundred dollars. The other complainants have been born since that time. They have ever since been regarded *35 and treated by the complainant Elias, and others, as his wife and children, and not as his slaves and property. Upon this state of the facts, how will a court of chancery regard the condition of the complainants? It looks at the very substance, of things, at the very purpose and intention of parties, and will not suffer mere legal forms, the dress and drapery of a transaction, to alter the nature of things, and baffle the end aimed át. The contract of Phelps Read, the Administrator’s sale, and its circumstances, taken together, prove, that both Read and his heirs purposed the emancipation and freedom of the woman and child, but declined to enter into the bond required by law to indemnify the county; and therefore, clothed Elias with the mere form of a legal title, to the end, that he might be able at any time to emancipate — accompanying this transfer of the mere legal title, was a trust in favor of the freedom of the wife and children, arising necessarily from the very nature of the whole transaction. Did the administrator and the heirs at law, when the sale took place, consent that Elias might have the woman and child, worth, as slaves, six or seven hundred dollars, with the view of conferring upon him a pecuniary advantage? If a stranger had bought, on such terms, they would, no doubt, have exacted from him written evidence showing' an express trust in favor of the emancipation of the woman and child. But they trusted, and not rashly, it seems, to the heart of the husband and the father, as being at least equivalent to the deed of another. If he, stifling the voice of nature, and severing the paternal tie, had been such a barbarian and monster as to have meditated a sale of them, for his pecuniary advantage, upon the strength of his mere legal title, is there a chancery court in Christendom, having jurisdiction over such a trust, which would not have promptly interposed, at their instance, and enjoined him from perpetrating against them, so flagrant a wrong? And will not such a court interpose in a case little short in its enormity, of that supposed, where a creditor of Elias seeks to produce the same result by an execution sale at law? Certainly it should. That much we have power, and it is our duty to do. We decree, therefore, as to a sale of the woman and the children, a perpetual injunction *36 against tbe defendant, and that he pay the costs in the chan-eery court, and iii' this court. But as Elias has power to emancipate the other complainants, with the consent of the County Court of the proper county, and is willing to emancipate them, it is not clear that this court has jurisdiction to do so, and is the proper forum, in this stage and attitude of the matter, to give the consent of the government.
Let application be made to the County Court.